**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ISRAEL DIAZ ESPINOZA,<br><br>            Petitioner,<br><br>      v.<br><br>MARKWAYNE MULLIN, ET AL.,<br><br>            Respondents. | Case No. 5:26-cv-02885-AJR<br><br>**MEMORANDUM DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND VACATING TEMPORARY RESTRAINING ORDER TO PRESERVE THE COURT'S JURISDICTION (DKT. 10)** |

**I.**

**INTRODUCTION & PROCEDURAL HISTORY**

On May 27, 2026, Petitioner Israel Diaz Espinoza (A# 075-130-453) ("Petitioner"), an immigration detainee represented by counsel, filed a Verified Petition for Writ of Habeas Corpus (the "Petition"), challenging his detention in immigration custody.  (Dkt. 1 at 2.)  On May 31, 2026, Respondents Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"), Rodney S. Scott, Commissioner of Customs and Border Protection ("CBP"), Jaime Rios, Acting Field Office Director for Los Angeles, Immigration and Customs Enforcement ("ICE"), Eddy Wang, Special Agent in Charge for Los Angeles,

Homeland Security Investigations ("HSI"), ICE, and Warden of Adelanto Detention Center (collectively, "Respondents") filed a Notice of Intended Removal.  (Dkt. 6.)  The Notice of Intended Removal advises that Respondents "intend to remove Petitioner in two court days or shortly thereafter in accordance with his final removal order."  (Id. at 2.)  According to the notice, "ICE has served a notice of removal on the Petitioner, identifying him as scheduled for removal on June 4, 2026, in accordance with his Final Order of Removal."  (Id. at 2-4.)

On June 1, 2026, Petitioner filed a Reply to the Notice of Intended Removal.  (Dkt. 8.)  Also on June 1, 2026, Petitioner filed an *Ex Parte* Application for Temporary Restraining Order, Stay of Removal, and Order Preserving Status Quo (the "*Ex Parte* Application for Temporary Restraining Order").  (Dkt. 9.)  Also on June 1, 2026, the Court issued a Temporary Restraining Order to Preserve the Court's Jurisdiction.  (Dkt. 10.)  Specifically, the Court directed Respondents not to remove Petitioner from the Untied States or from the Central District of California until further order from this Court.  (Id. at 2.)  The Court noted that the briefing on the Petition would be completed in a matter of days and that the Court would promptly rule on the Petition and vacate the temporary restraining order at that time.  (Id. at 3.)

On June 3, 2026, Respondents filed an Answer and Opposition to Petitioner's *Ex Parte* Application for Temporary Restraining Order (the "Answer").  (Dkt. 12.)  On June 4, 2026, Petitioner filed a Reply in Support of the *Ex Parte* Application for Temporary Restraining Order.  (Dkt. 13.)  Petitioner had until June 6, 2026 to file an optional reply to the Answer, but declined to do so.  The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes.  (Dkts. 3, 7.)  **For the reasons set forth below, the Court must DENY the Petition.  Therefore, the Court also VACATES the Temporary Restraining Order to Preserve the Court's Jurisdiction.  (Dkt. 10.)**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition, which is verified by counsel. (Dkt. 1 at 13.) Respondents had the opportunity to dispute these facts, but declined to do so. (Dkt. 12.) Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner entered the United States many years ago and has continuously resided here. (Dkt. 1 at 7.) Petitioner is a resident of Corona, California and is the father of two U.S. citizen children. (Id.) Petitioner's U.S. citizen sister filed an I-130 petition for Petitioner on or about November 14, 1997. (Id. at 7, 15-16.) This petition will allow Petitioner to pursue full adjustment of status under 8 U.S.C. § 1255 without the need for a waiver of having to depart the United States, so long as the priority date is current. (Id. at 7-8.) The visa priority date is now at October 15, 2000. (Id. at 8.) This means that any person with a priority date on or before October 15, 2000 is now eligible to pursue adjustment of status. (Id.)

Petitioner applied for adjustment of status by filing the appropriate I-485 petition. (Id. at 8, 18.) Petitioner was then scheduled for an adjustment of status interview for March 27, 2026. (Id. at 8, 20.) It was at this interview on May 27, 2026, that Petitioner was detained by ICE. (Id. at 8.) Petitioner has no prior criminal history. (Id.) At the time of the filing of the Petition, Petitioner was being detained at the Los Angeles ICE Field Office located in downtown Los Angeles, but had been informed that he would be transferred to the Adelanto Detention Center. (Id. at 2.)

Respondents provided the following additional facts that do not contradict any facts alleged by Petitioner. On May 29, 2026, ICE served Petitioner with a

3

Notification of Removal stating that he was scheduled for removal on June 4, 2026 in accordance with the Final Order of Removal issued on August 24, 1995, by the Immigration Judge.  (Dkt. 6 at 3.)  Pursuant to the Final Order of Removal, Respondents intend to promptly remove Petitioner to Mexico.  (Dkt. 12 at 2.)

## III.
## SUMMARY OF PETITIONER'S CLAIMS

In the Petition, Petitioner contends that he is not subject to mandatory detention under 8 U.S.C. § 1225(b) and instead is subject to discretionary detention under 8 U.S.C. § 1226(a).  (Dkt. 1 at 9-11.)  Petitioner seeks immediate release from custody, or in the alternative, an individualized bond hearing before a neutral Immigration Judge within seven days.  (Id. at 12.)

In the Reply to the Notice of Intended Removal, Petitioner appears to contend that the Government improperly declined to adjudicate his application for adjustment of status and instead, ICE arrested him.  (Dkt. 8 at 2.)  Petitioner contends that he possesses a presently available statutory avenue through which he may seek lawful permanent residence and that Respondents are attempting to remove him before any tribunal has an opportunity to determine whether he may pursue that relief.  (Id. at 2-3.)

Petitioner expands on these arguments in his Reply in Support of the *Ex Parte* Application for Temporary Restraining Order.  (Dkt. 13.)  Petitioner contends that Respondents acted unlawfully by affirmatively initiating and administering an adjustment-of-status process that culminated in Petitioner's arrest at the very interview scheduled to adjudicate his application.  (Id. at 3.)  Petitioner argues that principles of equity prevent Respondents from waiting thirty-one years to execute the Final Order of Removal without permitting Petitioner sufficient time to seek review of his claims.  (Id. at 4-5.)  Petitioner argues that permitting Respondents to arrest Petition at his adjustment of status interview would render the adjustment

4

process largely illusory.  (Id. at 6.)

## IV.

## DISCUSSION

The Court must first consider whether it has jurisdiction to grant the requested relief.  See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction . . . .").  Respondents contend that 8 U.S.C. § 1252(g) strips this Court of jurisdiction to delay or stay the Government from enforcing the removal of a non-citizen to their home country pursuant to their final removal order.  (Dkt. 12 at 5.)  Under 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien."  The Supreme Court has construed Section 1252(g) to apply only to those three specified actions, stressing that the statutory aim is to prevent "attempts to impose judicial constraints upon prosecutorial discretion."  Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482, 485 n.9 (1999); see Arce v. United States, 899 F.3d 796, 800–01 (9th Cir. 2018) (holding that Section 1252(g) is limited to the "three specific discretionary actions").  However, a "district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority."  United States v. Hovsepian, 359 F.3d 1144, 1155 (9th Cir. 2004).

The Ninth Circuit made clear that Section 1252(g) strips district courts of jurisdiction over claims that challenge the decision to execute a removal order, notwithstanding pending applications for relief.  See Rauda v. Jennings, 55 F. 4th 773, 778 (9th Cir. 2022).  In Rauda, the Ninth Circuit held that Section 1252(g) deprived the district court of jurisdiction to block a removal pending the resolution of a putatively meritorious motion to reopen filed with the Board of Immigration

5

Appeals ("BIA"):

> Matias also attempts to avoid § 1252(g)'s jurisdictional bar by arguing that his challenge pertains not to the Attorney General's discretionary authority, but rather to the Attorney General's allegedly unlawful decision to "remov[e] him now." But § 1252(g)'s jurisdictional bar on "claim[s] . . . arising from the decision or action by the Attorney General to . . . execute removal orders" does not include any temporal caveats. As the Third Circuit has observed, "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it. Both are covered by the statute." Tazu v. Att'y Gen. United States, 975 F.3d 292, 297 (3d Cir. 2020) (emphasis in original) (citation omitted).

Id. at 777. The Ninth Circuit further explained that there was no authority for entering a stay of removal pending a motion to reopen, when the BIA had not granted a stay:

> Matias asserts that applying the plain text of § 1252(g) and refusing to enter a stay of removal pending the resolution of his motion to reopen "would deprive a noncitizen [of] his statutory right to file a motion to reopen." But that's not true. Matias's motion to reopen has already been filed, and is currently pending before the BIA. Once the BIA decides that motion, Matias will be able to file a petition for our court to review that final agency action— including review of the BIA's denial of his request for a stay of removal pending its decision.

Id.

The holding in Rauda is directly applicable here. Petitioner is clearly asking this Court to stay or delay the execution of his Final Order of Removal so that he can pursue a motion to reopen in immigration court. But Petitioner's remedy lies with the immigration courts, up through the BIA, and ultimately to the Ninth Circuit. See J.E.F.M. v. Lynch, 837 F.3d 1026, 1031 (9th Cir. 2016) ("Taken

6

together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition-for-review] process."); see id. at 1035 ("We conclude that §§ 1252(a)(5) and 1252(b)(9) channel review of all claims, including policies-and-practices challenges, through the [petition-for-review] process whenever they 'arise from' removal proceedings."). This Court's habeas jurisdiction does not permit the relief sought in the Petition.

## V.

## CONCLUSION

Based on the foregoing, the Petition must be DENIED based on lack of jurisdiction. Accordingly, the Court must also VACATE the Temporary Restraining Order to Preserve the Court's Jurisdiction. (Dkt. 10.) The Court will enter Judgment DISMISSING this action WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED:   June 8, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

7